IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AGILITI HEALTH, INC., | § |
| *Plaintiff,* | § |
| | § |
| v. | § CASE NO.: 3:24-cv-65 |
| | § |
| STEWARD HEALTH CARE SYSTEM, | § |
| LLC, | § |
| | § |
| *Defendant.* | § |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, Agiliti Health, Inc. ("Agiliti"), for its first amended complaint against defendant

Steward Health Care System, LLC, alleges upon personal knowledge with respect to itself and its

own acts, and upon information and belief with respect to all other matters, as follows:

### NATURE AND DESCRIPTION OF ACTION

1.      This is a breach of contract action by Agiliti concerning Steward's failure to make

lease payments for medical equipment, and for fees owed for maintaining and servicing medical

equipment.

### JURISDICTION AND VENUE

2.      The Court has jurisdiction of this action under 28 U.S.C. § 1332 because the

amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity

of citizenship exists.

3.      Agiliti is a Delaware corporation with its principal place of business in

Minnesota.

4.      Steward is a Delaware limited liability company.

PLAINTIFF'S FIRST AMENDED COMPLAINT – PAGE 1

5.      Upon information and belief,[1] Steward's sole member is nonparty Steward Health Care Holdings, LLC ("Steward Holdings").

6.      Nonparty Steward Holdings is a Delaware limited liability company.

7.      Upon information and belief, Steward Holdings has seven members, whose states of citizenship are identified in the following paragraphs.

8.      Upon information and belief, Michael Callum is a member of nonparty Steward Holdings and a citizen of Massachusetts.

9.      Upon information and belief, Ralph de la Torre is a member of nonparty Steward Holdings and a citizen of Texas.

10.     Upon information and belief, Octavio Diaz is a member of nonparty Steward Holdings and a citizen of Texas.

11.     Upon information and belief, John Donlan is a member of nonparty Steward Holdings and a citizen of Massachusetts.

12.     Upon information and belief, Christopher Dunleavy is a member of nonparty Steward Holdings and a citizen of Texas.

13.     Upon information and belief, Nathalie Hibble is a member of nonparty Steward Holdings and a citizen of Massachusetts.

14.     Upon information and belief, nonparty Medical Properties Trust, Inc. is a member of nonparty Steward Holdings.

15.     Nonparty Medical Properties Trust, Inc. is a Maryland corporation with its

---

[1] "[W]hen a defendant has diligently investigated publicly available sources and determined that no partner of a plaintiff partnership is likely a citizen of the same state as the defendant, the defendant may affirmatively state the citizenship of a partnership upon 'information and belief.'" *Hise Real Est. Invs., LP v. Great Lakes Ins. SE*, No. 4:20-CV-820-SDJ, 2021 WL 217264, at *3 (E.D. Tex. Jan. 21, 2021).

principal place of business in Alabama.

16.     Steward is a physician-owned operator of various hospitals, none of which are located in Delaware or Minnesota.

17.     Upon information and belief, none of Steward's or Steward Holdings' members are citizens of Delaware.

18.     Upon information and belief, none of Steward's or Steward Holdings' members are citizens of Minnesota.

19.     Personal jurisdiction over Steward is proper because its principal place of business is in Dallas, Texas.

20.     Venue is proper under 28 U.S.C. § 1391(b) because Steward's principal place of business is in this District.

21.     In addition, the events giving rise to this action occurred in this District, including the delivery of medical equipment, and medical equipment maintenance and repair services provided to Steward.

## FACTUAL BACKGROUND

22.     Agiliti is a lessor of medical equipment and provides medical equipment maintenance and repair services to hospitals.

23.     Steward is a general hospital.

### 1.     The Master Services Agreement

24.     In January 2023, Agiliti entered into a Master Services Agreement (the "MSA") with Steward under which Agiliti agreed to provide equipment safety, maintenance, and repair services.  In exchange, Steward agreed to remit monthly payments to Agiliti for the services rendered at an agreed rate.

PLAINTIFF'S FIRST AMENDED COMPLAINT – PAGE 3

25.     An authentic copy of the MSA is attached as Exhibit A.  All Exhibits referenced in this amended complaint are the same as those referenced in Agiliti's original complaint, *see*, Doc. No. 1.

26.     Agiliti and Steward amended the MSA twice.

27.     Authentic copies of the amendments are attached as Exhibits B and C.

28.     Under the terms of the MSA, as amended, Agiliti provided Steward with medical equipment under lease, and medical equipment maintenance and repair services.

**2.      Steward's Breach of the Agiliti Invoices**

29.     Between March 2021 and December 2023, Agiliti issued invoices (the "Agiliti Invoices") to Steward for the price of the medical equipment leased, and equipment repair services performed at Steward's request.  An authentic copy of the Agiliti Invoices is attached as Exhibit D.

30.     Steward ordered the goods and services identified in the Agiliti Invoices.

31.     The goods and services identified in the Agiliti Invoices were provided at the location(s) Steward requested.

32.     Steward accepted the goods and services identified in the Agiliti Invoices.

33.     Steward did not pay the price of the Agiliti Invoices.

34.     Steward received the Agiliti Invoices at or around the time of the invoice dates.

35.     There were no defects or nonconformities in any items listed on the Agiliti Invoices.

36.     Steward has no documents showing there were any defects or nonconformities in any items listed on the Agiliti Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

37.     Steward did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) in writing of any defects or nonconformities in any of the items listed on the Agiliti Invoices before this case was filed.

38.     Steward did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) verbally of any defects or nonconformities in any of the items listed on the Agiliti Invoices before this case was filed.

39.     Steward has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) of any defects or nonconformities in any of the items listed on the Agiliti Invoices before this case was filed.

40.     The goods identified in the Agiliti Invoices are not capable of being returned to Agiliti in substantially the same condition as they were in when they were delivered.

41.     Steward had an opportunity to inspect the goods and services identified in the Agiliti Invoices when they were provided.

42.     Steward did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) in writing that it was rejecting any of the goods or services identified in the Agiliti Invoices before this case was filed.

43.     Steward did not notify Agiliti (or any of its affiliates, subsidiaries, or employees) verbally that it was rejecting any of the goods or services identified in the Agiliti Invoices before this case was filed.

44.     Steward has no documents showing it notified Agiliti (or any of its affiliates, subsidiaries, or employees) it was rejecting any of the goods or services identified in the Agiliti Invoices before this case was filed.

PLAINTIFF'S FIRST AMENDED COMPLAINT – PAGE 5

45.     Steward did not object in writing to any of the terms of the Agiliti Invoices before this case was filed.

46.     Steward did not object verbally to any of the terms of the Agiliti Invoices before this case was filed.

47.     Steward never notified Agiliti (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods and services identified in the Agiliti Invoices before this case was filed.

48.     Steward never notified Agiliti (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the goods and services identified in the Agiliti Invoices before this case was filed.

49.     Steward never made any efforts to return any of the goods identified in the Agiliti Invoices to Agiliti (or any of its affiliates, subsidiaries, or employees).

50.     Steward has no documents showing it made any efforts to return any of the goods identified in the Agiliti Invoices to Agiliti (or any of its affiliates, subsidiaries, or employees).

51.     Steward never denied liability for the amount of the Agiliti Invoices before this case was filed.

52.     Steward has no documents showing it gave Agiliti (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Agiliti Invoices before this case was filed.

53.     Pursuant to Agiliti's Invoices, payment of $2,835,808.59 was due between April 2021 and December 2023.

54.     An authentic copy of Agiliti's statement of account identifying the unpaid balance of the Agiliti Invoices is attached as Exhibit E.

55.     Steward has not paid any of the amounts indicated as being outstanding on the statement of account.

56.     Steward is also still in possession of medical equipment that belongs to Agiliti.

57.     Steward is liable to Agiliti in an amount to be determined at trial but in no event less than $2,835,808.59, plus late charges of 18% per annum, together with Agiliti's attorneys' fees and expenses.

**3.     Steward's Breach of the Agiliti Surgical Invoices**

58.     Between August 2022 and December 2023, Agiliti Surgical, Inc. ("Agiliti Surgical") issued invoices (the "Surgical Invoices") to Steward for the price of medical equipment leased, and equipment repair services performed at Steward's request.  An authentic copy of the Surgical Invoices is attached as Exhibit F.

59.     Steward ordered the goods and services identified in the Surgical Invoices.

60.     The goods and services identified in the Surgical Invoices were provided at the location(s) Steward requested.

61.     Steward accepted and used the goods and services identified in the Surgical Invoices.

62.     Steward did not pay the price of the Surgical Invoices.

63.     Steward received the Surgical Invoices at or around the time of the invoice dates.

64.     There were no defects or nonconformities in the goods and services identified in the Surgical Invoices.

65.     Steward has no documents showing there were any defects or nonconformities in any items listed on the Surgical Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

PLAINTIFF'S FIRST AMENDED COMPLAINT – PAGE 7

66.     Steward did not notify Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) in writing of any defects or nonconformities in any of the goods and services identified in the Surgical Invoices before this case was filed.

67.     Steward did not notify Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) verbally of any defects or nonconformities in any of the goods and services identified in the Surgical Invoices before this case was filed.

68.     Steward has no documents showing it notified Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) of any defects or nonconformities in any of the goods and services identified in the Surgical Invoices before this case was filed.

69.     The goods identified in the Surgical Invoices are not capable of being returned to Agiliti Surgical in substantially the same condition as they were in when they were delivered.

70.     Steward had an opportunity to inspect the goods and services identified in the Surgical Invoices when they were provided.

71.     Steward did not notify Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) in writing that it was rejecting any of the goods and services identified in the Surgical Invoices before this case was filed.

72.     Steward did not notify Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) verbally that it was rejecting any of the goods and services identified in the Surgical Invoices before this case was filed.

73.     Steward has no documents showing it notified Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) it was rejecting any of the goods and services identified in the Surgical Invoices before this case was filed.

74.     Steward did not object in writing to any of the terms of the Surgical Invoices before this case was filed.

75.     Steward did not object verbally to any of the terms of the Surgical Invoices before this case was filed.

76.     Steward never notified Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods and services identified in the Surgical Invoices before this case was filed.

77.     Steward never notified Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the goods and services identified in the Surgical Invoices before this case was filed.

78.     Steward never made any efforts to return any of the goods identified in the Surgical Invoices to Agiliti Surgical (or any of its affiliates, subsidiaries, or employees).

79.     Steward has no documents showing it made any efforts to return any of the goods identified in the Surgical Invoices to Agiliti Surgical (or any of its affiliates, subsidiaries, or employees).

80.     Steward never denied liability for the amount of the Surgical Invoices before this case was filed.

81.     Steward has no documents showing it gave Agiliti Surgical (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Surgical Invoices before this case was filed.

82.     Under the Surgical Invoices, payment of $885,063.41 was due between September 2022 and December 2023.

83.     An authentic copy of Agiliti Surgical's statement of account identifying the unpaid balance of the Surgical Invoices is attached as Exhibit G.

84.     Steward has not paid any of the amounts listed as being outstanding on the statement of account.

85.     Steward is liable for payment of the Surgical Invoices in an amount to be determined at trial but in no event less than $885,063.41, plus late charges of 18% per annum, together with attorneys' fees and expenses.

**4.     Steward's Breach of the Agiliti Surgical Equipment Repair Invoices**

86.     Between August 2022 and December 2023, Agiliti Surgical Equipment Repair, Inc. ("Agiliti Repair") issued invoices (the "Repair Invoices") to Steward for the price of the medical equipment leased, and equipment repair services performed at Steward's request.  An authentic copy of the Repair Invoices is attached as Exhibit H.

87.     Each of the Repair Invoices issued by Agiliti Repair includes the following language incorporating its terms and conditions and return policy:

> Services performed by Agiliti [Repair] are governed by the Agiliti Surgical Equipment Repair Terms and Conditions . . . which can be viewed at https://www.agilitihealth.com/resources/forms and are incorporated by reference herein.

88.     An authentic copy of Agiliti Repair's terms and conditions downloaded on December 5, 2023, is attached as Exhibit I.

89.     Among other provisions, the Agiliti Repair terms and conditions state that:

- Agiliti [Repair] may charge an additional fee of 1.5% per month (18% per annum) or the maximum rate allowed by law, whichever is less, to late payments. (Ex. I, p. 1, s. 1 "Payment Terms")

- [Steward] will give Agiliti [Repair] written notice of any incorrect charges within 90 days of the Agiliti [Repair] invoice to which the claim relates.  After 90 days,

the originally invoiced amount will be deemed to be correct. (Ex. I, p. 1, s. 1 "Payment Terms")

- AGILITI [REPAIR] MAKES ABSOLUTELY NO WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE QUALITY, CONDITION OR PERFORMANCE OF EQUIPMENT OR PATENT INFRINGEMENT, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ARISING FROM A COURSE OF DEALING, LAW, USAGE OR TRADE PRACTICE." (Ex. I, p. 2, s. 7 "Disclaimer of Warranties and Liability Limitation")

90.     Steward ordered the goods and services identified in the Repair Invoices.

91.     The goods and services identified in the Repair Invoices were delivered to the location(s) Steward requested.

92.     Steward accepted and used the goods and services identified in the Repair Invoices.

93.     Steward did not pay the price of the Repair Invoices.

94.     Steward received the Repair Invoices at or around the time of the invoice dates.

95.     There were no defects or nonconformities relating to the goods and services identified in the Repair Invoices.

96.     Steward has no documents showing there were any defects or nonconformities in any items listed on the Repair Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

97.     Steward did not notify Agiliti Repair (or any of its affiliates, subsidiaries, or employees) in writing of any defects or nonconformities in any of the goods and services identified in the Repair Invoices before this case was filed.

98.     Steward did not notify Agiliti Repair (or any of its affiliates, subsidiaries, or employees) verbally of any defects or nonconformities in any of the goods and services identified in the Repair Invoices before this case was filed.

99.     Steward has no documents showing it notified Agiliti Repair (or any of its affiliates, subsidiaries, or employees) of any defects or nonconformities in any of the goods and services identified in the Repair Invoices before this case was filed.

100.    The goods identified in the Repair Invoices are not capable of being returned to Agiliti Repair in substantially the same condition as they were in when they were delivered.

101.    Steward had an opportunity to inspect the goods and services identified in the Repair Invoices when they were provided.

102.    Steward did not notify Agiliti Repair (or any of its affiliates, subsidiaries, or employees) in writing that it was rejecting any of the goods and services identified in the Repair Invoices before this case was filed.

103.    Steward did not notify Agiliti Repair (or any of its affiliates, subsidiaries, or employees) verbally that it was rejecting any of the goods and services identified in the Repair Invoices before this case was filed.

104.    Steward has no documents showing it notified Agiliti Repair (or any of its affiliates, subsidiaries, or employees) it was rejecting any of the goods and services identified in the Repair Invoices before this case was filed.

105.    Steward did not object in writing to any of the terms of the Repair Invoices before this case was filed.

106.    Steward did not object verbally to any of the terms of the Repair Invoices before this case was filed.

107.    Steward never notified Agiliti Repair (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods and services identified in the Repair Invoices before this case was filed.

108.    Steward never notified Agiliti Repair (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the goods and services identified in the Repair Invoices before this case was filed.

109.    Steward never made any efforts to return any of the goods identified in the Repair Invoices to Agiliti Repair (or any of its affiliates, subsidiaries, or employees).

110.    Steward has no documents showing it made any efforts to return any of the goods and services identified in the Repair Invoices to Agiliti Repair (or any of its affiliates, subsidiaries, or employees).

111.    Steward never denied liability for the amount of the Repair Invoices before this case was filed.

112.    Steward has no documents showing it gave Agiliti Repair (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Repair Invoices before this case was filed.

113.    Pursuant to the Repair Invoices, payment of $453,241.89 was due between September 2022 and December 2023.

114.    An authentic copy of Agiliti Repair's statement of account identifying the unpaid balance of the Invoices is attached as Exhibit J.

115.    Steward has not paid any of the amounts indicated as being outstanding on the statement of account.

116.     Steward is liable for payment of the Repair Invoices in an amount to be determined at trial but in no event less than $453,241.89, plus late charges of 18% per annum, together with attorneys' fees and expenses.

**5.      Steward's Breach of the Sizewise Invoices**

117.     Between March 2021 and November 2023, non-party Sizewise Rentals, LLC ("Sizewise") issued invoices (the "Sizewise Invoices") to Steward for medical equipment leased and repair services performed at Steward's request.  An authentic copy of the Sizewise Invoices is attached as Exhibit K.

118.     Each of the Sizewise Invoices includes the following language incorporating its terms and conditions and return policy:

> Unless otherwise expressly agreed in writing . . . all sales of product and services are subject to the Sizewise Rentals, L.L.C. Standard Terms and Conditions of Sale, a copy of which may be obtained by contacting your local Sizewise representative, calling 800-814-9389 or at www.sizewise.com/legal.

119.     An authentic copy of Sizewise's Standard Terms and Conditions of Sale downloaded on November 29, 2023, is attached as Exhibit L.

120.     Among other provisions, Sizewise's Standard Terms and Conditions of Sale state:

- An order by [Steward], [Steward]'s receipt of product (purchased or rented), or Sizewise's commencement of Maintenance Services will constitute [Steward]'s acceptance of these Terms and Conditions.  (Ex. L, p. 1, s. 1 "General").

- All Charges incurred are the sole responsibility of [Steward]. Unless invoiced separately with different terms, payment is due upon delivery of the product, completion of the Maintenance Services or any other services, as applicable. (Ex. L, p. 2, s. 4 "Prices and Payment")

- If [Steward] fails to pay any Charges or other amounts when due, [Steward] shall pay Sizewise interest thereon at a rate of one and one-half (1.5%) per month (or the highest rate permitted by law) together with all costs and expenses (including without limitation reasonable attorneys' fees and court costs) incurred by Sizewise in collecting such overdue Charges and amounts or otherwise enforcing Sizewise's rights.  (Ex. L, p. 2, s. 4 "Prices and Payment")

- Upon receipt and approval of a [Steward] order, including any specific order guide Sizewise requires [Steward] to complete for the ordered product, a shipping/delivery date will be established by Sizewise.  Unless otherwise provided on the body of the Sales Quote, (a) all product purchased by [Steward] will be shipped EXW Sizewise's location . . .  (Ex. L, p. 1, s. 2 "Delivery/Returns and Risk of Loss")

- [Steward] shall notify Sizewise immediately upon the discovery of any alleged defect by contacting Sizewise Parts and Service.  (Ex. L, p. 2, s. 5 "Warranty and Disclaimer of Warranties")

- SIZEWISE ALSO HEREBY DISCLAIMS AND EXCLUDES ALL OTHER OBLIGATIONS OR LIABILITIES  .  .  .  WITH RESPECT TO ANY NONCONFORMANCE OR DEFECT IN ANY PRODUCT OR PART(S), INCLUDING BUT NOT LIMITED TO: (A) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM, OR REMEDY IN TORT, WHETHER OR NOT ARISING FROM THE NEGLIGENCE OF SIZEWISE OR ITS SUPPLIERS . . . ; AND (B) ANY OBLIGATION, LIABILITY, RIGHT, CLAIM, OR REMEDY FOR LOSS OF OR DAMAGE TO ANY PRODUCT OR PART(S).  (Ex. L, pp. 3-4, s. 5(d) Limitation of Liability and Disclaimer")

121.    Steward ordered the goods and services identified in the Sizewise Invoices.

122.    The goods and services identified in the Sizewise Invoices were delivered to the location(s) Steward requested.

123.    Steward accepted the goods and services identified in the Sizewise Invoices.

124.    Steward did not pay the price of the Sizewise Invoices.

125.    Steward received the Sizewise Invoices at or around the time of the invoice dates.

126.    There were no defects or nonconformities relating to the goods and services identified in the Sizewise Invoices.

127.    Steward has no documents showing there were any defects or nonconformities in any items listed on the Sizewise Invoices (such as photos, inspection reports, or emails/text messages sent before this case was filed).

128.    Steward did not notify Sizewise (or any of its affiliates, subsidiaries, or employees) in writing of any defects or nonconformities in any of the goods and services identified in the Sizewise Invoices before this case was filed.

129.    Steward did not notify Sizewise (or any of its affiliates, subsidiaries, or employees) verbally of any defects or nonconformities in any of the goods and services identified in the Sizewise Invoices before this case was filed.

130.    Steward has no documents showing it notified Sizewise (or any of its affiliates, subsidiaries, or employees) of any defects or nonconformities in any of the goods and services identified in the Sizewise Invoices before this case was filed.

131.    The goods identified in the Sizewise Invoices are not capable of being returned in substantially the same condition as they were in when they were delivered.

132.    Steward had an opportunity to inspect the goods and services identified in the Sizewise Invoices when they were provided.

133.    Steward did not notify Sizewise (or any of its affiliates, subsidiaries, or employees) in writing that it was rejecting any of the goods and services identified in the Sizewise Invoices before this case was filed.

134.    Steward did not notify Sizewise (or any of its affiliates, subsidiaries, or employees) verbally that it was rejecting any of the goods and services identified in the Sizewise Invoices before this case was filed.

135.    Steward has no documents showing it notified Sizewise (or any of its affiliates, subsidiaries, or employees) it was rejecting any of the goods and services identified in the Sizewise Invoices before this case was filed.

PLAINTIFF'S FIRST AMENDED COMPLAINT – PAGE 16

136.    Steward did not object in writing to any of the terms of the Sizewise Invoices before this case was filed.

137.    Steward did not object verbally to any of the terms of the Sizewise Invoices before this case was filed.

138.    Steward never notified Sizewise (or any of its affiliates, subsidiaries, or employees) in writing that it had breached any express or implied warranty with respect to any of the goods and services identified in the Sizewise Invoices before this case was filed.

139.    Steward never notified Sizewise (or any of its affiliates, subsidiaries, or employees) verbally that it had breached any express or implied warranty with respect to any of the goods and services identified in the Sizewise Invoices before this case was filed.

140.    Steward never made any efforts to return any of the goods identified in the Sizewise Invoices to Sizewise (or any of its affiliates, subsidiaries, or employees).

141.    Steward has no documents showing it made any efforts to return any of the goods identified in the Sizewise Invoices to Sizewise (or any of its affiliates, subsidiaries, or employees).

142.    Steward never denied liability for the amount of the Sizewise Invoices before this case was filed.

143.    Steward has no documents showing it gave Sizewise (or any of its affiliates, subsidiaries, or employees) notice of any problems with, or objections to, its performance of any of its obligations with respect to the Sizewise Invoices before this case was filed.

144.    Pursuant to the Sizewise Invoices, payment of $143,120.73 was due between April 2021 and December 2023.

PLAINTIFF'S FIRST AMENDED COMPLAINT – PAGE 17

145.    An authentic copy of Sizewise's statement of account identifying the unpaid balance of the invoices is attached as Exhibit M.

146.    Steward has not paid any of the amounts indicated as being outstanding on the statement of account.

147.    Steward is liable for payment of the Sizewise Invoices in an amount to be determined at trial but in no event less than $143,120.73, plus late charges of 18% per annum, together with Sizewise's attorneys' fees and expenses.

**6.      Assignment of Rights**

148.    On December 28, 2023, Agiliti Surgical, Agiliti Repair, and Sizewise assigned their contractual rights against Steward to Plaintiff, Agiliti Health, Inc.

149.    Steward is liable for the total of the Agiliti Invoices, Surgical Invoices, Repair Invoices and Sizewise Invoices in an amount to be determined at trial, but in no event less than $4,312,496.49 plus late charges of 18% per annum, together with Agiliti's attorneys' fees and expenses.

## <u>COUNT I</u>

### (Breach of Contract against Steward)

150.    Agiliti repeats the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

151.    The Agiliti Invoices, Surgical Invoices, Repair Invoices and Sizewise Invoices are valid and enforceable written contracts.

152.    Steward materially breached the terms of the Agiliti Invoices, Surgical Invoices, Repair Invoices and Sizewise Invoices by failing to pay them in full when due.

153.    Steward is liable for the total of the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices in an amount to be determined at trial, but in no event less than $4,312,496.49 plus late charges of 18% per annum, together with Agiliti's attorneys' fees and expenses.

## AS AND FOR A SECOND CAUSE OF ACTION
### (*Quantum Meruit* against Steward)

154.    Agiliti repeats each of the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

155.    Agiliti and its assignors provided Steward with the goods and services identified in the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices in good faith.

156.    Steward accepted and benefitted from the goods and services identified in the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices, but failed to pay for them.

157.    Agiliti and its assignors had a reasonable expectation that they would receive payment for the goods and services identified in the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices.

158.    The price of the goods and services identified in the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices was reasonable and their value and was agreed to by the parties through the invoices.

159.    Agiliti is entitled to receive payment for the value of the goods and services identified in the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices in an amount to be determined at trial, but believed to exceed $4,312,496.49, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

PLAINTIFF'S FIRST AMENDED COMPLAINT – PAGE 19

## AS AND FOR A THIRD CAUSE OF ACTION
### (Account Stated against Steward).

160.    Agiliti repeats and re-alleges each of the allegations set forth in the preceding

paragraphs of the Complaint as if fully set forth herein.

161.    Steward expressly agreed to pay the Agiliti Invoices, Surgical Invoices, Repair

Invoices, and Sizewise Invoices by accepting the goods and services identified in the invoices.

162.    In November 2023, Agiliti sent correspondence to Steward seeking payment of

$4,273,871.12, which represented the amount owed.

163.    Agiliti and its assignors sent monthly invoices to Steward for the goods and

services identified in the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise

Invoices.

164.    Steward failed to reject or object to any of the Agiliti Invoices, Surgical Invoices,

Repair Invoices, or Sizewise Invoices.

165.    Contemporaneous with providing the goods and services identified in the Agiliti

Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices, Agiliti and its assignors

submitted a statement of account to Steward for the balance owed.

166.    Steward retained the statements of account without objection.

167.    Steward expressly or impliedly acknowledged the correctness of the balance owed

for the goods and services identified in the Agiliti Invoices, Surgical Invoices, Repair Invoices,

and Sizewise Invoices.

168.    Agiliti and its assignors have stated an account against Steward in the amount of

$4,312,496.49, plus late fees assessed at 18% per annum.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Right to Possession of Collateral under Tex. Bus. & Com. Code § 9.609)

169.    Agiliti repeats and re-alleges each of the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

170.    The Agiliti Invoices, Surgical Invoices, Repair Invoices and Sizewise Invoices are valid and enforceable written contracts.

171.    Pursuant to Tex. Bus. & Com. Code § 9.609, an event of default permits Agiliti to take possession of its collateral on Steward's property.

172.    Steward is in default of its obligations under the Agiliti Invoices, Surgical Invoices, Repair Invoices, and Sizewise Invoices by failing to make payments when due.

173.    Agiliti is entitled, at its election, to take possession of its collateral from Steward, and damages from the failure to pay the Agiliti Invoices, Surgical Invoices, Repair Invoices and Sizewise Invoices.

WHEREFORE, Agiliti prays for judgment against Steward, and requests the Court grant the following relief:

A.    On its first cause of action awarding Agiliti damages against Steward in an amount to be determined at trial but believed to exceed $4,312,496.49, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

B.    On its second cause of action awarding Agiliti damages against Steward in an amount to be determined at trial but believed to exceed $4,312,496.49, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

C.    On its third cause of action awarding Agiliti damages against Steward in an amount to be determined at trial but believed to exceed $4,312,496.49, plus late fees assessed at 18% per annum, and Agiliti's attorney's fees and costs.

D.      On its fourth cause of action awarding Agiliti the authorization to take possession of its collateral from Steward's premises.

D.      Awarding such other, further, and different relief as the Court shall deem proper.

DATED: January *17*, 2024

Respectfully submitted,

Cowles & Thompson, P.C.

By: _____
Casey S. Erick
Texas Bar No. 24028564
Email: cerick@cowlesthompson.com

901 Main Street, Suite 3900
Dallas, TX 75202
Tel. (214) 672-2138
Fax. (214) 672-2338

– and –

Scott E. Blakeley*
David M. Mannion*
BLAKELEY LC
530 Technology Drive, Suite 100
Irvine, CA 92618
Tel. (949) 260-0611
Email: SEB@BlakeleyLC.com
Email: DMannion@BlakeleyLC.com

**ATTORNEYS FOR PLAINTIFF,
AGILITI HEALTH, INC.**

*Pro hac vice applications forthcoming*